IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:18-CV-9-BO

TRUDELL MEDICAL INTERNATIONAL,)
)
    Plaintiff, )
)
v. ) O R D E R
)
D R BURTON HEALTHCARE, LLC, )
)
    Defendant. )


D R BURTON HEALTHCARE, LLC, )
)
    Counterclaim Plaintiff, )
)
v. )
)
TRUDELL MEDICAL INTERNATIONAL )
and MONAGHAN MEDICAL CORP. )
)
    Counterclaim Defendants. )

This cause comes before the Court on defendant's appeal of Magistrate Judge Kimberly A. Swank's denial of its motion to compel the production of documents and counterclaim defendant Monaghan Medical's motion to dismiss for lack of personal jurisdiction and improper venue. For the following reasons, defendant's appeal is denied and counterclaim defendant Monaghan's motion to dismiss is denied without prejudice.

BACKGROUND

Trudell Medical International (Trudell) is a partnership organized and existing under the laws of Canada, with its principal place of business in Ontario, Canada. Trudell is a medical device company that designs, develops, and sells an oscillating positive expiratory pressure

(OPEP) device called the Aerobika. Trudell manufacturers the Aerobika device in Canada, which it then sells to its affiliate, Monaghan Medical Corp. (Monaghan). Monaghan, a New York corporation, markets and sells the Aerobika device throughout the United States, including in North Carolina. D R Burton Healthcare, LLC (DRB), is a medical device company based in Farmville, North Carolina, which designs, develops, manufactures, and sells various respiratory devices, included the vPEP, which is an OPEP device. The Aerobika competes directly with DRB's devices for sales in the OPEP product market.

On January 29, 2018, Trudell sued DRB, asserting claims for infringement of U.S. Patent No. 9,808,588, entitled "Oscillating Positive Respiratory Pressure Device." Trudell filed a First Amended Complaint on June 20, 2018 and a Second Amended Complaint on May 9, 2019. On May 23, 2019, DRB filed its answer and affirmative defenses and counterclaims to the Second Amended Complaint, as well as moved to join Monaghan as a counterclaim defendant. Trudell filed its opposition to DRB's motion for leave to add Monaghan and moved to dismiss the counterclaims on June 13, 2019, but Magistrate Judge Kimberly A. Swank subsequently denied Trudell's motion to dismiss and granted DRB's motion to join Monaghan.

On June 15, 2020, Monaghan moved to dismiss the counterclaims against it for lack of personal jurisdiction and improper venue. The counterclaims directed at both Trudell and Monaghan, and which are therefore at issue here, are counterclaims three through five, for Lanham Act false advertising under 15 U.S.C. § 1125(a), civil conspiracy, and unfair and deceptive trade practices. In its counterclaims, DRB claims that Trudell and Monaghan, acting in concert, published false or misleading representations concerns DRB's vPEP to influence the purchasing decisions of target customers to DRB's detriment. On July 13, 2020, DRB moved for jurisdictional discovery related to an issue presented in Monaghan's motion to dismiss. On

February 8, 2021, Judge Swank granted the motion for jurisdictional discovery in part and denied it in part.

During discovery, DRB requested all documents related to the settlement in the patent infringement lawsuit captioned *Monaghan Medical Corp. v. Smiths Medical ASD, Inc.*, (DED-17-cv-00712) (*Smiths Case*). In that case, Monaghan filed a complaint for a declaratory judgment that the Aerobika, the alleged patented device in this case before the Court, does not infringe U.S. Patent No. 7,059,324, owned by Smiths Medicals ASD, Inc. (Smiths). DRB made an oral motion to compel production of documents relating to the *Smiths Case*, and both parties filed briefs. On June 30, 2020, Judge Swank denied DRB's motion to compel. On June 15, 2020, DRB filed an order appealing Judge Swank's decision in that case.

## DISCUSSION

*Motion to Dismiss*

Monaghan seeks dismissal of the counterclaims for lack of personal jurisdiction. Fed R. Civ. P. 12(b)(2). Where a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff has the burden of showing that jurisdiction exists. *See New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005); *Young v. F.D.I.C.*, 103 F.3d 1180, 1191 (4th Cir. 1997). When a court considers a challenge to personal jurisdiction without an evidentiary hearing and on the papers alone, it must construe the relevant pleadings in the light most favorable to the plaintiff. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

"A federal district court may exercise personal jurisdiction over a foreign corporation only if: (1) such jurisdiction is authorized by the long-arm statute of the state in which the district court sits and (2) application of the relevant long-arm statute is consistent with the Due Process Clause of the Fourteenth Amendment." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th

Cir. 2014). The North Carolina long-arm statute "permits the exercise of personal jurisdiction to the outer limits allowable under federal due process," so the determinative question is whether a plaintiff has made a showing that a defendant "had sufficient contacts with North Carolina to satisfy constitutional due process." *Id.* at 558–59. In order to determine whether there is specific jurisdiction over a defendant, the Court applies a three-part test: "(1) whether and to what extent the defendant 'purposely availed' itself of the privileges of conducting activities in the forum state, and thus invoked the benefits and protections of its laws, (2) whether the plaintiff's claim arises out of those forum-related activities, and (3) whether the exercise of jurisdiction is constitutionally 'reasonable.'" *Ricks v. Armstrong Int'l, Inc.*, No. 4:14-CV-37-BO, 2014 U.S. Dist. LEXIS 86600, at *7 (E.D.N.C. June 23, 2014) (quoting *Christian Sci. Bd. of Dirs. Of the First Church of Christ, Sci. v. Nolan*, 259 F.3d 209, 215–16 (4th Cir. 2001)).

Rule 12(b)(3) of the Federal Rules of Civil Procedure provides for dismissal of a complaint that is filed in an improper venue. Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred;" a judicial district in which any defendant resides, if all defendants are residents of the state in which the district located; or any judicial district in which any defendant is subject the court's personal jurisdiction in the action, if there is no other district in which the action may be brought. 28 U.S.C. § 1391(b). The standards for deciding a motion to dismiss for lack of personal jurisdiction and a motion to dismiss for lack of venue are the same. *IHFC Properties, LLC v. APA Marketing, Inc.*, 850 F. Supp. 2d 604, 615 (M.D.N.C. 2012). If a case is filed "in the wrong division or district," the district court in which it is filed "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). If venue is proper, a motion to change venue must be brought under 28 U.S.C. § 1404.

4

On February 8, 2021, Judge Swank granted DRB's motion for jurisdictional discovery, requiring Monaghan to respond to interrogatories and document production requests proposed by DRB. As Judge Swank noted, DRB alleged that emails obtained in discovery showed that Monaghan delivered allegedly false advertising documents to its sales representatives/territory managers and district managers for distribution. DRB further argued that jurisdictional discovery would allow DRB to show that Monaghan distributed the false advertising documents in North Carolina. As DRB itself notes, DRB's claim of personal jurisdiction is based on the allegation that Monaghan purposefully directed wrongful conduct to North Carolina by sending the false advertising documents to recipients in North Carolina. As a result, the information produced during jurisdictional discovery wil lbe determinative in resolving the motion to dismiss. The Court denies Monaghan's motion to dismiss for lack of jurisdiction and improper venue without prejudice, to be refiled if appropriate based on the outcome of jurisdictional discovery.

*Appeal of Order Denying Motion to Compel*

Title 28 U.S.C. § 636, Rule 72 of the Federal Rules of Civil Procedure, and this Court's local rules authorize magistrate judges to decide certain non-dispositive pretrial measures, including motions related to discovery disputes. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); Local Civil Rule 72.3(b). Upon timely appeal by an objecting party, a district judge must "modify or set aside any part of the order that is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a), 28 U.S.C. § 636(b)(1)(A). "A factual finding is clearly erroneous when [a court is] 'left with the definite and firm conviction that a mistake has been committed.'" *TFWS, Inc. v. Franchot*, 572 F.3d 186, 196 (4th Cir. 2009) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985)); *see also United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948). A ruling that is contrary to law is one where "the magistrate judge has misinterpreted or misapplied

5

applicable law." *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008). "Although the 'contrary to law' standard permits plenary review of legal conclusions, decisions related to discovery disputes and scheduling are accorded greater deference. *Johnson v. City of Fayetteville*, No. 5:12-CV-456-F, 2013 U.S. Dist. LEXIS 111289, at *8 (E.D.N.C. Aug. 5, 2013) (quoting *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010) (citing *In re Outsidewall Tire Lit.*, 267 F.R.D. 466, 470 (E.D. Va. 2010)).

Rule 26 of the Federal Rules of Civil Procedure provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* Relevance has been "broadly construed to encompass 'any possibility' that the information sought may be relevant to the claim or defense of any party." *Johnson*, 2013 U.S. Dist. LEXIS 111289, at *8 (quoting *EEOC v. Sheffield Fin. LLC*, No. 1:06CV889, 2007 U.S. Dist. 43070, at *9–10 (M.D.N.C. June 12, 2007); *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 473 (N.D. Tex. 2005)). The Court has substantial discretion to manage discovery. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995). Rule 37 allows a party to move to compel discovery if "a party fails to answer an interrogatory submitted under Rule 33" or fails to produce or make available for inspection documents requested pursuant to Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iii), (iv). Federal Circuit precedent applies to discovery disputes in patent cases when relevance is at issue, including disputes relating to settlement agreements. *See Volumetrics Med. Imaging, LLC v. Toshiba Am. Med. Sys., Inc.*, No 1:05CV955, 2011 U.S. Dist. LEXIS 65422, at *16–18 (M.D.N.C. June 20, 2011) (citations omitted).

A common approach to calculating the alleged damages in a patent-infringement case is to determine a reasonable royalty rate. *See* 35 U.S.C. § 284 ("Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer."); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324–25 (Fed. Cir. 2009). A reasonable royalty is the amount a person desiring to manufacture, import, use, or sell a produce covered by a patent would be willing to pay as a royalty. *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1568 (Fed. Cir. 1984). To calculate the reasonable royalty rate, courts consider fifteen factors set out in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 11120 (S.D.N.Y. 1970). These factors include the royalties received by the patentee for the licensing of the patent in suit, the rates paid by the license for the use of other parents comparable to the patent in suit, the portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous invention, and the amount that a licensor and a licensee would have agreed upon at the time the alleged infringement began if both had been reasonably and voluntarily trying to reach an agreement. *Id.*

Here, the order denying the motion to compel is not contrary to law and should therefore be affirmed. There is a "longstanding disapproval of relying on settlement agreements to establish reasonable royalty damages," and such reliance is only permitted "under certain limited circumstances." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012) (citation omitted). These agreements are not necessarily probative because "the hypothetical reasonable royalty calculation occurs before litigation and that litigation itself can skew the results of the hypothetical negotiation." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872

7

(Fed. Cir. 2010) (citation omitted). Courts have allowed settlement licenses, however, when they were "the most reliable license in [the] record." *See id.* at 870–72 (allowing a settlement license to the patents-in-suit in a running royalty form when it was "the most reliable license in [the] record" when compared to other licenses that did not "even mention[] the patents in suit or show[] any other discernible link to the claimed technology"); *Stragent, LLC v. Intel Corp.*, No. 6:11-cv-421, 2014 U.S. Dist. LEXIS 106167 (E.D. Tex. Mar. 6, 2014) (allowing licenses reflecting litigation settlements whether they were the "*only* licenses in the record and cover[ed] the patents-in-suit" (emphasis in original)). However, these limited circumstances do not apply here. DRB produced documents evidencing its own May 2015 licensing discussions with a potential distributor, Teleflex, Inc., for its intellectual property covering the device in this case, as well as a distribution agreement with Vyaire Medical, Inc. Contrary to DRB's argument that comparing a licensing agreement to a distribution agreement is an apples-to-orange comparison, other courts have found distribution agreements to be "sufficiently 'comparable' to be probative of the hypothetical negotiation." *SSL Servs., LLC v. Citrix Sys.*, 940 F. Supp. 2d 480, 489–90 (E.D. Tex. 2013).

Furthermore, this particular settlement agreement is irrelevant to the reasonable royalty calculation. *Volumetrics Med. Imaging*, 2011 U.S. Dist. LEXIS at 65422, at *54–55 (finding a "blanket assertion that licenses rising from settlement agreements generally lack any relevance to a reasonable royalty determination" insufficient to prevent discovery of settlement agreements when plaintiff has "offered no argument that anything about the particular licensing agreements contained in its settlement agreements . . . render[ed] them irrelevant to the reasonably royalty calculation"). As Judge Swank noted in her order, the settlement agreement does not contain enough information to reliably estimate, or that would reasonably lead to information from

8

which one could reliably estimate, "the economic demand for the claimed technology." *LaserDynamics*, 694 F.3d at 77 (quoting *ResQNet*, 594 F.3d at 872). An *in camera* review of the settlement agreement confirmed that the settlement agreement does not contain a particular royalty rate for the use of the patents at issue in the *Monaghan* case, and an attempt to parse such an economic valuation of the patents at issue in *Monaghan* from the settlement agreement's total economic valuation would be pure speculation and, therefore, improper. *See ResQNet*, 594 F.3d at 869 ("[A] reasonable royalty analysis requires a court to hypothesize, not to speculate."). Additionally, the *Monaghan* case involved claims and a case posture that are radically different than the claims and posture in this case, making that settlement agreement irrelevant to determining the economic link between infringement and the patents. *Id.* ("At all times, the damages inquiry must concentrate on compensation for the economic harm caused by the infringement of the claimed invention."). The Court's responsibility is to determine a reasonably royalty rate based upon a hypothetical negotiation, and a settlement agreement that does not contain information about economic valuation is irrelevant. *Dow Chem. Co. v. United States*, 36 Fed. Cl. 15, 22 (1996) ("The negotiation does not include . . . settlement agreements or other evidence not relevant to value.").

## CONCLUSION

For the foregoing reasons, counter defendant Monaghan's motion to dismiss for lack of jurisdiction is DENIED WITHOUT PREJUDICE. [DE 153]. Judge Swank's order denying defendant's motion to compel is AFFIRMED. [DE 159].

SO ORDERED, this 21 day of February, 2021.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE